SPURR & a. *v.* RUSSELL & a.

The sale by one of two partners of his partnership interest to one who becomes his successor in the firm, does not destroy the priority of the right of a creditor of the original firm to payment of his debt out of the partnership property of the original firm to the extent of the other original partner's interest in that property.

BILL IN EQUITY, taken *pro confesso* as to the defendants O. K. Russell, H. Russell, and Fellows.    The defendants Loverin and Wadsworth appear and answer.    Facts found by the court.

O. K. Russell and Loverin, having been partners in trade at New London in 1874, dissolved, and Russell gave Loverin his note for $900 in settlement of their affairs, and Russell continued the

business alone till February 11, 1878, when he gave his son, the defendant H. Russell, who had been for some time his clerk, $500 in the stock of goods, and they formed a copartnership under the name of O. K. Russell & Son, H. Russell having a third interest in the business. This partnership continued till December 19, 1878, when it was dissolved, and O. K. sold one undivided half of the goods and fixtures in the store to Fellows for $1,250 in money, and the balance of his interest in the goods and fixtures to H. Russell for $750, and loaned him $250, and took his note for $1,000. At the same time they settled the partnership affairs of Russell & Son by giving O. K. the assets of the firm not sold as above, he agreeing to pay all its debts. H. Russell and Fellows then formed a copartnership under the name of Russell & Fellows, as equal partners, January 20, 1879. O. K., finding that he was insolvent, made an assignment under the state law, for the benefit of his creditors. Of all these facts the plaintiffs were immediately informed.

The plaintiffs had sold goods to O. K. Russell & Son, who were indebted to the plaintiffs at the time of the dissolution. The plaintiffs were notified of the dissolution of the firm of O. K. Russell & Son, and January 21 the plaintiffs' agent was at New London, and O. K. Russell notified him of his assignment; whereupon the agent obtained a writ of attachment against O. K. Russell & Son, defendants, and Fellows, trustee, and placed it in the hands of one Flanders, a deputy sheriff, for service, who went on the same day to the store of Russell & Fellows, and served it upon the trustee, and attached an undivided half of the goods and fixtures in the store, and all the interest of H. Russell in the same, subject to the rights of Fellows, the other partner, and of the creditors of Russell & Fellows, and placed Fellows in possession of the same as keeper for him, in which capacity he agreed to act, and did act till the closing of the store at 9 or 10 o'clock of the evening of that day. It was also understood that H. Russell had keys to the store, and he was allowed by Flanders at Fellows's request to remain in the store to assist Fellows as his servant, and retain his keys, to which H. made no objection. Flanders read his writ to H. and O. K., who lived in the building, and notified them fully as to what he had done. He posted no notice of the attachment, but it was publicly made and generally known. The goods and fixtures in the store when the attachment was made were all, or nearly all, there when the firm of O. K. Russell & Son was dissolved.

Before January 21 O. K. Russell had pledged the $1,000 note of H. to the defendant Loverin as security for the $900 note he owed him; and on that day Loverin, after the attachment by Flanders, on consultation with O. K. and H. Russell, and having full knowledge of the same, through the assistance and agency of the Russells, placed the defendant Wadsworth, a deputy sheriff, with a writ in his possession on the $1,000 note of H., in the store of

Russell & Fellows, about 12 o'clock at night, when he attached
the interest of H. in the goods and fixtures, and kept the posses-
sion of the same, as against Flanders, Fellows, and every one, till
ordered to surrender them five days afterwards by the court, hav-
ing with the assent of H., and against the will of Fellows, in-
ventoried the goods, and advertised the interest of H. for sale.
Fellows was a trustee in the writ of Loverin, and it was duly served
on him.  Wadsworth, after making his attachment, posted notices
of it, and kept possession till ordered to give it up, though it was
demanded, and the demand insisted upon by Flanders.  Fellows
closed the store when he left, between 9 and 10 o'clock, and had
no knowledge of what was done during the night, and assented to
nothing afterwards.

The action of the plaintiffs and that of Loverin were entered in
court, and such rights as the parties obtained by the attachments
still exist.  After the redelivery of the property, the interest of
H. in the firm was sold to Fellows for $500 by the agreement of
all the parties interested, and Flanders now holds the same sub-
ject to such application as the court shall order.  The plaintiffs,
after their attachment, and before they knew of Loverin's, filed a
bill for the dissolution of the firm of Russell & Fellows, which was
dropped, and this proceeding commenced on learning of Loverin's
attachment.

*Flanders*, for the plaintiffs.

*Barnard & Leach*, for Loverin and Wadsworth.

The property attached on which the question of priority depends
is the interest of H. Russell in the stock of Russell & Fellows,
which remains after paying the debts and adjusting the affairs of
that firm.  This must be considered the individual property of H.
Russell.  The old firm of Russell & Son had been dissolved over a
month in good faith, and with immediate notice to the plaintiffs.
When Russell & Fellows began business, each owned one undivided
half of the stock, and the interest of each was his individual prop-
erty.  The creditors of the old firm of Russell & Son lost their
priority in the share H. Russell took at the dissolution of that firm
when they allowed it to go into another firm as his individual
property, and with full knowledge allowed the new firm creditors
to gain a priority over them.  If by a *bona fide* transfer partner-
ship property has become the several property either of one partner
or of a third person, the equities of the partners are extinguished,
and consequently the derivative equities of the creditors are at an
end.  *Case* v. *Beauregard*, 99 U. S. 119, 125.  Rights of partner-
ship creditors to a preference in partnership property do not ex-
tend so far as to affect a *bona fide* transmutation of partnership
into private property made prior to or upon a dissolution.  1 Pars.

Cont. 212; *Howe* v. *Lawrence*, 9 Cush. 553; Collyer Part., *s.* 358; 4 Gilman (Ill.) 38; *Morrison* v. *Kurtz*, 15 Ill. 196; 13 Gray 121; 14 Gray 537; 3 Allen 83; *Parker* v. *Bowles*, 57 N. H. 497, in which, by citing with approval *Ruffin, Ex-parte*, 6 Ves., Jr., 119, the court overrule *Ferson* v. *Monroe*, 21 N. H. 468. Separate creditors of a person who is a member of two firms have a preference over his interest in property derived from one of the firms as against the creditors of the other firm. *Weaver* v. *Weaver*, 46 N. H. 188; 20 How. 125.

*Flanders*, for the plaintiffs, in reply.

All that is necessary to enable different classes of partnership creditors to enforce their priority is, that the property can be traced through the successive partnerships. The priority of the creditors does not rest on the equities of the partners *inter se. Jarvis* v. *Brooks*, 23 N. H. 136, 146; *Benson* v. *Ela*, 35 N. H. 402, 410, 411, 415; *Weaver* v. *Weaver*, 46 N. H. 188, 191, 192. The partnership property of O. K. Russell & Son is traced to H. Russell, the son, and his interest in it is held by the plaintiffs' attachment. There was no prior attachment. Loverin is not a creditor of either of the firms. Russell & Fellows had no creditors. There has been no subsequent attachment. After Flanders attached the property on the plaintiffs' writ, any subsequent attachment should have been made by him. The proceedings of Loverin & Wadsworth were not such as the law recognizes as a legal attachment.

Doe, C. J. By a rule well settled in this state, the sale by O. K. Russell of his partnership interest, and the introduction of Fellows, his vendee, as his successor in the firm, did not destroy the priority of the plaintiffs' right to payment of their debt out of the property of the original firm of O. K. Russell & Son to the extent of the son's interest in that property. If by this rule the rights of the parties are not fully adjusted, they can be heard again.

*Case discharged.*

Bingham, J., did not sit : the others concurred.